# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

### Case No.: 14-cv-61572-BB

WADE GAINES KILPATRICK, and
HOLLY LIVELY, individually and on
behalf of all other persons similarly
situated,

       Plaintiffs,

v.

CARIBBEAN CRUISE LINE, INC.,
CELEBRATION CRUISE LINE
MANAGEMENT, LLC,
CELEBRATION CRUISE LINE, LLC,
SUNBRIDGE SYSTEMS, LLC,
THE MARKETING SOURCE, INC.,
CELEBRATION CRUISE HOLDING, INC.,
DANIEL E. LAMBERT,
JAMES H. VERRILLO, and
BAHAMAS PARADISE CRUISE LINE,
LLC

       Defendants

_____/

CONSOLIDATED CLASS ACTION

## PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

COMES NOW, WADE GAINES KILPATRICK and HOLLY LIVELY ("Plaintiffs"),

individually and on behalf of all other persons similarly situated, bringing this consolidated class

action complaint against Defendants CARIBBEAN CRUISE LINE, INC., CELEBRATION

CRUISE LINE MANAGEMENT, LLC, CELEBRATION CRUISE LINE, LLC,

CELEBRATION CRUISE HOLDING, INC., (collectively, the "Cruise Line Defendants"),

SUNBRIDGE SYSTEMS, LLC ("Sunbridge"), THE MARKETING SOURCE, INC. ("TMS"),

DANIEL E. LAMBERT ("Lambert"), JAMES H. VERRILLO ("Verrillo"), and BAHAMAS

PARADISE CRUISE LINE, LLC ("Paradise"), and allege, upon personal knowledge as to their own conduct, investigation of counsel, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.      This case involves a scheme developed by a travel marketing company and cruise lines to market purportedly "free cruises" to consumers.  The sales of these purported free vacation packages is achieved through aggressive telemarketing campaigns in plain violation of TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.*[1]  Astonishingly, Defendants even called Plaintiff Kilpatrick for telemarketing purposes *after* he filed his Original Class Action Complaint with this Court. Such exemplifies Defendants' shameless contempt for the law and Plaintiff Kilpatrick's grievances.

2.      All Defendants acted in concert to market travel packages to consumers through telemarketing efforts that include sending unauthorized advertisements *via* facsimile and placing unauthorized "robo-calls" to consumers *via* ATDS and/or a pre-recorded or artificial voice.

3.      Plaintiffs bring this class action against Defendants to secure redress because Defendants willfully violated the TCPA by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

4.      Defendants made one or more unauthorized calls to Plaintiffs' cell phone using an automatic telephone dialing system ("ATDS") for the purpose of soliciting business from Plaintiffs.

---

[1] On information and belief, Defendants have placed in excess of 40,000,000 calls.

5.      Pursuant to the TCPA, Plaintiffs and the Class Members seek judgment against Defendants equal to $500.00 per violation, together with attorneys' fees, court costs, and treble damages (for knowing and/or willful violations).

## PARTIES

6.      Plaintiff WADE GAINES KILPATRICK is a citizen of the State of Texas who resides in Austin, Travis County, Texas.

7.      Plaintiff HOLLY LIVELY is a citizen of the State of California who resides in Sacramento, Sacramento County, Texas.

8.      Defendant CARIBBEAN CRUISE LINE, INC., is a corporation organized under the laws of the State of Florida.  Defendant maintains its principle place of business at 5100 North State Road 7, Fort Lauderdale, Florida 33319.  Defendant has appeared and answered in this case.

9.      Defendant CELEBRATION CRUISE LINE MANAGEMENT, LLC, is a business organized under the laws of the State of Florida.  Defendant maintains its principle place of business at 2419 E. Commercial Blvd., Ste. 302, Fort Lauderdale, Florida 33308.  Defendant has appeared and answered in this case.

10.      Defendant CELEBRATION CRUISE LINE, LLC, is a business organized under the laws of the State of Florida.  Defendant maintains its principle place of business at 2419 E. Commercial Blvd., Ste. 302, Fort Lauderdale, Florida 33308.  Defendant has appeared and answered in this case.

11.      Defendant CELEBRATION CRUISE HOLDING, INC., is a business organized under the laws of the State of Florida.  Defendant maintains its principle place of business at 2419 E. Commercial Blvd., Ste. 302, Fort Lauderdale, Florida 33308.  It may be served with process upon its registered agent, Greenspoon Marder, P.A., 100 W. Cypress Creek Rd., Suite 700, Fort

Lauderdale, Florida 33309.

12.     Defendant SUN BRIDGE SYSTEMS, LLC is a Florida limited liability company with its principal place of business at 518 Lakewood Drive, Oldsmar, Florida 34677.  Defendant has appeared and answered in this case.

13.     Defendant THE MARKETING SOURCE, INC. is a Florida corporation with its principal place of business at 12551 Indian Rocks Road, Suite 2, Largo, Florida 33774.  Defendant has appeared and answered in this case.

14.     Defendant DANIEL E. LAMBERT is a citizen of the State of Florida.  Defendant may be served with process at 2899 NE 27th Street, Fort Lauderdale, Florida 33306.  Lambert is an officer of the Cruise Line Defendants.

15.     Defendant JAMES H. VERRILLO is a citizen of the State of Florida.  Defendant may be served with process at 3100 NE 46th Street, Lighthouse Point, FL 33064.  Verrillo is an officer of the Cruise Line Defendants.

16.     Defendant BAHAMAS PARADISE CRUISE LINE, LLC, is a business organized under the laws of the State of Florida.  Defendant maintains its principle place of business at 1 E. 11th St., Suite 200, Riviera Beach, Florida 33404.  It may be served with process upon its registered agent, Greenspoon Marder, P.A., 100 W. Cypress Creek Rd., Suite 700, Fort Lauderdale, Florida 33309.

17.     Defendants CARIBBEAN CRUISE LINE, INC., CELEBRATION CRUISE LINE MANAGEMENT, LLC, CELEBRATION CRUISE LINE, LLC, CELEBRATION CRUISE HOLDING, INC., and BAHAMAS PARADISE CRUISE LINE, LLC are herein sometimes referred to collectively as the "Cruise Line Defendants".

18.     Whenever in this complaint it is alleged that Defendants committed any act or

omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

19. Plaintiffs are informed and believe and thereon allege that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe and thereon allege that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

20. At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

## JURISDICTION & VENUE

21. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant. Furthermore, Plaintiff Class consists of at least one hundred members.

22. The Court has personal jurisdiction over all Defendants because all Defendants are domiciled in the State of Florida, maintain their principal offices in the State of Florida, are organized under the laws of the State of Florida, and conduct business in the State of Florida.

23.     Venue is proper in this District because the conduct which is the subject of this lawsuit emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

24.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

25.     Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

26.     Unless the recipient has given prior express written consent, as of October 16, 2013, the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

27.     Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008).  This ruling specifically recognized "on behalf of " liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

28.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

29.     Defendants Lambert and Verrillo have been doing business together in some capacity for over a decade.  Lambert and Verrillo have formed and operated several consumer related enterprises from which they have reaped substantial personal financial benefits through dishonest business practices.  In 1999, both Lambert and Verrillo were sued by the Securities Exchange Commission for insider trading.[2]  In 2000, Lambert and Verrillo paid $1.5 million to

---

[2] https://www.sec.gov/litigation/litreleases/lr16392.htm

settle a breach of trust action brought by 17 states in connection with deceptive marketing "free vacation" packages.

30.     In 2008, Lambert and Verrillo formed the Cruise Line Defendants and began marketing "free" vacation packages to consumers for trips on the Bahamas Celebration cruise ship.[3]  Defendant Celebration Cruise Holding, Inc., an entity owned and controlled by Lambert and Verrillo, owns and operates the Bahamas Celebration.  The Cruise Line Defendants' primary method of recruiting customers is through a large-scale telemarketing campaign.

31.     The Cruise Line Defendants engaged in a separate campaign similar to that which is the subject of this case, from or about July 2011 until August 2012, with other entities not named in this case.  The scheme is described in the Complaint filed on or about March 3, 2015 in *Federal Trade Commission, et al. v. Caribbean Cruise Line, Inc., et al*., United States District Court for the Southern District of Florida, case number 15:cv-60423-WJZ.  The Cruise Line Defendants would receive between $2.00 and $3.00 for each lead from a robocall wherein the consumer stayed on the phone with a Cruise Line Defendants agent for more than 30 seconds.  Cruise Line Defendants would receive 20,000 inbound transfer calls a week, and in less than 10 months, paid between $1,000,000 and $2,000,000 for leads alone.  In August 2012, some of the individuals named in the *Federal Trade Commission* action stopped the enterprise.  At that point, the Cruise Line Defendants began to look for new partners to supply the leads via robocalls.  On March 3, 2015, defendant Caribbean Cruise Line, Inc. entered into a stipulated Order and Permanent Injunction include a $7,730,000 Judgment.

---

[3] Based on consumer reports, Defendants call consumers to offer "free" trips aboard the Bahamas Celebration if the called party agrees to pay a one-time port fee over the phone.  However, passengers reported they were later being forced to pay fees and charges that were not disclosed to them when they agreed to purchase the trip, and to submit to a multi-hour sales pitch for time shares at the Vacation Village – a company in which both Lambert and Verrillo have significant financial interests.

32.     The Cruise Line Defendants then engaged Sunbridge and YMS to obtain consumers telephone numbers for the purpose of placing telemarketing calls to consumers who never solicited information to Defendants or requested Defendants call them.   Defendants obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers and by capturing numbers used to call or submit web inquiries on various websites.  On information and belief, Defendants purchase customer lists from credit card companies and or other sources.  Lambert and Verrillo oversee, control, and direct the Cruise Line Defendants' actions.  The Cruise Line Defendants initiated, directed the manner of, and actively participated in the telemarketing calls that are the subject of this case.

33.     In Defendants' overzealous attempt to market their services, they placed (and continue to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendants. Not surprisingly, these practices have led to significant backlash from consumers:[4]

- "It's some kind of scam cruise line gimmick...."

- "Called me several times, and, made the mistake of picking up. Some fast talking lady looking to give away cruise tix if you just agree to tell all relatives and friends how great it was. Hung up very quickly."

- "I rec'd a call that I won a free cruise and was transferred to a spokesperson for Caribbean Cruise Line which I've never heard of. As he was giving me his spiel I searched for reviews on this line and found only 1 stars staying basically STAY AWAY. I told him because of the low reviews I wasn't interested and he

---

[4] *See, e.g.*, 800Notes for (512) 379-5885, http://800notes.com/Phone.aspx/1-512-379-5885; 800notes for (512) 339-9558, http://800notes.com/Phone.aspx/1-512-339-9558; http://www.yelp.com/biz/caribbean-cruise-line-fort-lauderdale

became so irate and rude insisting he DID NOT call me but it was the other way around. Is he kidding me?

- "Good luck getting off this company's call list.  I've received a CELL PHONE call from them three times a day for the last three days.  Asking to be removed from the list doesn't seem to help."

- "This is a telephone scam using a prerecorded intro claiming to be 'John from Political Opinions of America.'  Sometimes it's 'Anne.'  They called my cell phone number, which (as is the case with my home number), is on the national Do Not Call List.  However, charities and opinion surveys are exempt. THIS IS NOT A LEGITIMATE SURVEY.  IT MIGHT WELL BE A SCAM TO GET YOUR CREDIT CARD NUMBER, although I am amazed that some of the reviewers actually did get close to a ship - of sorts."

- "This is a definite scam. They called me this morning (even though my number is on the Do Not Call list (will also file a complaint there)) and gave me a 3 question survey and if I completed I would get a voucher for a free cruise. When push came to shove they wanted my credit card so they could charge me the port taxes. When I told the agent I had no intention of giving my credit card to someone over the phone that I have never done business with [ ]he asked me to hold. His alleged supervisor got on the phone and then tried to get me to give her my credit card number. When I told her I had no intent of doing so and they can mail me the forms, she got very defensive saying her company had been around for 20 years and was very reputable. Which is when I mentioned the C-

rating they have with the BBB and the poor reviews on this site and others. She

immediately hung up on me."

34.    Defendants knowingly made (and continue to make) these telemarketing calls

without the prior express written consent of the call recipients and knowingly continue to call them

after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiffs and

members of the putative Class, but also intentionally and repeatedly violated the TCPA.

35.    As a result of Defendants' unscrupulous business practices, Defendants have been

subjected to numerous TCPA lawsuits and government investigations.  Rather than compensating

the victims of their practices, Cruise Line Defendants endeavored to transfer assets out of their

name to a new separate entity, Paradise.  Cruise Line Defendants, at the direction of Lambert and

Verrillo, transferred assets to Paradise either: (1) with actual intent to hinder, delay, or defraud

Plaintiffs and/or other creditors such as the U.S. Government and TCPA plaintiffs; or (2) without

receiving reasonably equivalent value in exchange for the transfer or obligations while the Cruise

Line Defendants were (a) engaged in agreements with creditors for which its remaining assets were

unreasonably small in relation to the obligations, or (b) reasonably should have believed they

would incur debts beyond their ability to pay as they became due.  Plaintiffs and the Plaintiff Class

will suffer substantial damages if Cruise Line Defendants are unable to satisfy a judgment or their

liability to Plaintiff and the Plaintiff Class.

### FACTUAL BACKGROUND AS TO PLAINTIFF KILPATRICK

36.    On or about June 20, 2014, Defendants contacted Kilpatrick on his cellular

telephone number ending in 8070 *via* ATDS as defined by 47 U.S.C. § 227(a)(1).

37.    Kilpatrick's caller ID showed the source number (512) 379-5885 as the call was

incoming.

38.     When Kilpatrick answered the call, a pre-recorded voice greeted Plaintiff by identifying itself as "Jennifer."

39.     "Jennifer" proceeded to ask Kilpatrick a series of "yes-or-no" questions before routing him to a live representative.

40.     "Jennifer's" voice recording continued to play while Defendants' telephone system rang to connect with the live representative.

41.     Kilpatrick was then greeted by a live representative who identified herself as "Suzanne," with employee identification number FL9954.

42.     Kilpatrick asked the purpose of the call, and Suzanne stated she worked for Caribbean Cruise Lines.

43.     Kilpatrick, suspicious of a scam call, asked if she actually worked for a cruise line.

44.     Suzanne assured Kilpatrick he was speaking directly with a representative of Caribbean Cruise Lines and then began to promote travel packages for cruises aboard the Bahamas Celebration.

45.     During her promotional pitch, Suzanne gave Kilpatrick a call-back number (954) 565-1808 in the event they were disconnected during the course of the call.

46.     Kilpatrick understood the purpose of the call was to solicit business from him, so Kilpatrick told Defendants' representative he was not interested.

47.     Suzanne persisted before Kilpatrick interrupted to inquire as to how Defendants obtained his number.

48.     Suzanne told Kilpatrick that his cell number could have been obtained from a number of sources, such as his credit card company.

49.     Kilpatrick never sought information from Defendants, nor did he ever authorize Defendants to contact him.

50.     On information and belief, Defendants purchased a database or list of telephone numbers that contained Kilpatrick's contact information.

51.     Suzanne then asked for Kilpatrick's mobile number.

52.     This surprised Kilpatrick because it revealed that Defendants' representatives were unaware of which number they were calling.

53.     It was apparent to Kilpatrick that a computer had randomly dialed his number from an electronically stored database.

54.     Kilpatrick was not interested in Defendants' offers, and the call was unwanted and disruptive.

55.     Therefore, Kilpatrick disconnected the call.

56.     On or around December 22, 2014, five months after filing this lawsuit, Kilpatrick received a call from (512) 339-9558, a number Kilpatrick knew from prior experience was associated with Defendants.

57.     Kilpatrick was greeted by Jennifer, who asked him a series of questions before transferring him to a representative named Dina, employee number FL9779.

58.     Dina told Kilpatrick he was speaking with Caribbean Cruise Lines, which she represented was the owner of the Bahamas Celebration cruise ship.

59.     Kilpatrick asked to speak to a supervisor and was transferred to Alex, employee number FL5347.

60.     Alex confirmed to Kilpatrick that Defendants do not know his name or phone number when the call is transferred from Jennifer.

61.     When Kilpatrick asked how Defendants obtained his cell phone number, Alex represented that Kilpatrick was "demographically chosen" based on his travel history.

62.     Alex went on to tell Kilpatrick that the calling party owned the Bahamas Celebration, and it would cost Kilpatrick $118 to book a trip on that cruise ship.

63.     At no time did Alex or any other representative of Defendants represent that Kilpatrick had provided Defendants written consent to contact him, even when asked directly about how Defendants obtained his information and why they were calling him.

64.     At no time prior to or after the above-described calls did Kilpatrick enter into a business relationship with Defendants or contact Defendants about their services.

65.     The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

66.     Kilpatrick pays the bill associated with the cellular telephone assigned the number ending in 8070.

67.     Kilpatrick is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8070.

68.     Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

69.     Kilpatrick did not provide Defendants prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

## FACTUAL BACKGROUND AS TO PLAINTIFF LIVELY

70.     Beginning on or around April 7, 2014 at approximately 4:40 p.m., Defendants contacted Lively on her cellular telephone at (209) ███-0551, in an attempt to communicate with

her regarding a cruise.

71.     The substance of the communications from Defendants was similar to the substance of the calls to Kilpatrick.

72.     Defendants called Lively from (209) 213-2487.  Defendants called Lively back on the same cellular phone on April 8, 2014 at approximately 5:40 p.m. and April 9, 2014 at 11:21 a.m.

73.     The number (209) 213-2487 is affiliated/controlled by Defendants, and each of them.

74.     Defendants used an "automated telephone dialing system," as defined by 47 U.S.C. § 227(a)(1) to place its calls to Lively seeking to communicate with Plaintiff regarding services from Caribbean Cruise.

75.     Defendants' call(s) constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

76.     Defendants' call(s) were placed to telephone numbers assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

77.     Defendants contacted Plaintiff from telephone number (209) 213-2487.

78.     Defendants never received Plaintiff's "prior express consent" to receive calls using an automated dialing system or an artificial or prerecorded voice on her cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

79.      All calls Defendants made to Plaintiffs violate 47 U.S.C. § 227(b)(1).

80.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited voice and text calls to cell phones.

81.     On behalf of the Class, Plaintiffs seek an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

82.     Pursuant to Rules 23(b) and (c) of the FEDERAL RULES OF CIVIL PROCEDURE, Plaintiffs bring this action on their own behalf and on behalf of the proposed Plaintiff Class. Plaintiffs seek certification of a Plaintiff Class consisting of:

> All persons within the United States who Defendants, or some person on Defendants' behalf, called the person's cellular telephone by using an automatic telephone dialing system, or using any other device that has the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendants' records fail to indicate prior express written permission from the recipient to make such call.

83.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

84.     Plaintiffs do not know the number of members in the Class, but believe the Class members number in the tens of thousands, if not more.  This matter should therefore be certified

as a Class Action to assist in the expeditious litigation of this matter.

85.     Plaintiffs and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiffs and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and Class members were damaged thereby.

86.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

87.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court.  The Class can be identified through Defendants' records or Defendants' agent's records.

88.     There is a well-defined community of interest in the questions of law and fact affecting Plaintiffs and the Plaintiff Class.  The questions of law and fact common to Plaintiffs and the Plaintiff Class predominate over questions affecting only individual members of the Plaintiff Class, and include, but are not limited to, the following:

> (a) Whether from October 16, 2013 to the date the Class is certified, Defendants contacted any member of the Class (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system to any telephone number assigned to a cellular phone service;
>
> (b) Whether the members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

(c) Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

89.     Plaintiffs assert claims that are typical of the Plaintiff Class based upon the conduct of Defendants which is uniform across all Class Members.

90.     Injuries sustained by Plaintiffs and the members of the Plaintiff Class flow, in each instance, from a common nucleus of operative facts.  Defendants or their agents used an ATDS to contact Plaintiff and the Plaintiff Class on their cellular telephones without prior consent.

91.     Plaintiffs are adequate representatives of the Plaintiff Class because their interests do not conflict with, and are not antagonistic to, the interests of the members of the Plaintiff Class he seeks to represent.  Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class.

92.     Plaintiffs have retained attorneys who are competent and experienced in the prosecution of class litigation and other complex litigation.

93.     Plaintiffs and the members of the Plaintiff Class have all sustained injuries caused by Defendants' conduct.

94.     A class action is superior to other methods for the fair and efficient adjudication of the subject controversy.  Absent a class action, the members of the Plaintiff Class likely will find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all.  Because of the relatively small size of the individual claims of the members of the Plaintiff Class, few members of the Plaintiff Class likely could afford to seek legal redress on their own. Absent a class action, members of the Plaintiff Class will continue to sustain damages, and Defendants' misconduct will proceed without remedy.

95.     The class treatment of common questions of law and fact is also superior to multiple

individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.  Additionally, Defendants have acted, and failed to act, on grounds generally applicable to Plaintiffs and the Plaintiff Class, requiring Court imposition of uniform relief to ensure compatible standards of conduct toward Plaintiffs and the Plaintiff Class.

96.     Adequate notice can be provided to the members of the Class directly using information maintained in Defendants' records or through notice by publication.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227**

97.     Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

98.     Defendants made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiffs' and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiffs and the Class Members.

99.     Defendants made the calls without prior express written consent of the Plaintiffs and Class Members.

100.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

101.     As a result of Defendants' violations of 47 U.S.C. § 227, *et. seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

102.    Because Defendants had knowledge that Plaintiffs and the Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and Class Members.

103.    Plaintiffs and the Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**SECOND CAUSE OF ACTION**
**PIERCING THE CORPORATE VEIL**
**(Lambert, Verrillo and Cruise Line Defendants)**

104.    Plaintiffs hereby adopt by reference each and every paragraph of the Facts and allegations stated in this Petition as if fully and completely set forth herein.

105.    Plaintiffs are entitled, and seek, to pierce the corporate veils of Cruise Line Defendants and hold their principals, Lambert and Verrillo, personally liable for damages suffered by Plaintiffs and the Plaintiff Class as a result of their wrongful conduct committed while acting in their capacity as agents and managing members of Cruise Line Defendants.

106.    At all relevant times, Cruise Line Defendants were organized and operated as a mere tool or business conduit of Lambert and Verrillo.  Furthermore, they were run by and for the personal benefit of Lambert and Verrillo and are the agents and instrumentalities through which they conducted business.  Therefore, they were nothing more than alter egos of Lambert and Verrillo and/or were used by them as a sham to perpetrate a fraud on Plaintiffs.

107.    Further, each Cruise Line Defendant has financial interests, ownership, and/or control of one another. Specifically, these Cruise Line Defendants functioned as an arm of one another. The Cruise Line Defendants have used their corporate shell games to perpetrate a fraud on Plaintiffs and those similarly situated by shifting assets between them and/or selling the entities

to ensure that people who have suffered as a result of Defendants' statutory violations could not recover funds from the Cruise Line Defendants. Cruise Line Defendants also share common addresses and registered agents, notably the law firm that represents them in this suit. The Cruise Line Defendants also share directors and officers. Upon information and belief, the Cruise Line Defendants also share corporate and individual property.

108.     On balance, there is such unity between the Cruise Line Defendants that their separateness has ceased to exist. Specifically, each exists and functions for the benefit of each other devoid of legal separation.

109.     The Cruise Line Defendants' corporate forms should also be disregarded, because they surreptitiously outsourced their violative telemarketing activities to [PARTY]. The Cruise Line Defendants created shell entities to attempt to circumvent liability for the TCPA by creating another purported corporate layer between the cruise ship owner, operator, and the majority of the companies' assets and the more direct TCPA violators.

110.     For all of these reasons, including but not limited to alter ego, sham to perpetrate a fraud, and their attempt to circumvent a statute, the Cruise Line Defendants' corporate forms should be disregarded.

### THIRD CAUSE OF ACTION
#### FRAUDULENT TRANSFER
#### (Lambert, Verrillo Cruise Line Defendants, and Paradise)

111.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth here.

112.     The Cruise Line Defendants are liable for fraudulently transferring Celebration Holding, Celebration, and Caribbean's assets to Paradise Cruise. Celebration Holding, Celebration, and Caribbean transferred assets to Paradise Cruise either: (1) with actual intent to

---

hinder, delay, or defraud Plaintiffs and/or other creditors such as the US government and TCPA plaintiffs; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligations while the Cruise Line Defendants were (a) engaged in agreements with creditors for which its remaining assets were unreasonably small in relation to the obligations, or (b) reasonably should have believed they would incur debts beyond their ability to pay as they became due. Plaintiffs and the Class have suffered substantial damages to the extent Celebration Holding, Celebration, and Caribbean are unable to satisfy their liability to Plaintiffs and the Class. Plaintiffs are further entitled to recover reasonable and necessary attorney's fees and costs, because they are equitable and just.

113.    Celebration Holding, Celebration, and/or Caribbean received insurance proceeds for damages to the Cruise Line Defendants' cruise ship and/or received sales proceeds for the sale of the ship, the MS Bahamas Celebration, and transferred those funds and other assets to Paradise Cruise in or about December, 2014 in an effort to avoid statutory liabilities to individuals with TCPA claims such as Plaintiffs and those similarly situated. The FTC and various states' attorney generals reduced the fine to be collected from Caribbean on the basis that Caribbean was financially unable to pay the full multi-million dollar fine.

114.    Paradise Cruise is also liable for the fraudulent transfer because it is a subsequent transferee and has benefited from the transfer. It now operates a new cruise ship.

## ATTORNEY'S FEES

115.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

116.    Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

117.    Plaintiffs, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and on behalf of the Plaintiff Class, prays for the following relief:

a.    An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP and Kristensen Weisberg, LLP as lead Class Counsel.

b.    An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.    An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.    Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.    Pre-judgment and post-judgment interest on monetary relief;

f.    An award of reasonable attorneys' fees and court costs in this action;

g.    All other and further relief as the Court deems necessary, just, and proper.


Respectfully Submitted,


_/s/ Benjamin H. Crumley_
Benjamin H. Crumley, Esq.
Florida Bar No. 18284
CRUMLEY & WOLFE, PA
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113

HUGHES ELLZEY, LLP
W. Craft Hughes
Texas Bar No. 24046123
E-Mail: craft@hughesellzey.com
Jarrett L. Ellzey
Texas Bar No. 24040864
E-Mail: jarrett@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
(*Admitted Pro Hac Vice*)

John P. Kristensen (CASBN 224132)
*john@kristensenlaw.com*
**Kristensen Weisberg, LLP**
12304 Santa Monica Blvd., Suite 221
Los Angeles, California 90025
Telephone:  (310) 507-7924
Fax:  (310) 507-7906
(*Admitted Pro Hac Vice*)

Christopher W. Wood (CASBN 193955)
*cwood@dbbwlaw.com*
Kelsey J. Fischer (CASBN 292262)
*kfischer@dbbwlaw.com*
**Dreyer Babich Buccola**
**Wood Campora, LLP**
20 Bicentennial Circle
Sacramento, California 95826
Telephone:  (916) 379-3500
Fax:  (310) 379-3599
(*Admitted Pro Hac Vice*)

**ATTORNEYS FOR PLAINTIFF**
**AND THE PROPOSED CLASS**

## <u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing document was filed in accordance with the protocols for e-filing in the United States District Court for the Southern District of Florida, Miami Division, on <u>July 23, 2015</u>, and served on all counsel of record who have consented to electronic notification *via* CM/ECF.

<u> /s/ Benjamin H. Crumley         </u>
Benjamin H. Crumley